UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>                Plaintiffs,<br><br>        v.<br><br>STATE OF WASHINGTON, et al.,<br><br>                Defendants. | CASE NO. CV 9213<br><br>Subproceeding No. 05-02<br><br>ORDER ON MOTION FOR RECONSIDERATION |

   This matter is before the Court for a ruling on a motion for reconsideration of the Court's November 21, 2006 Order on Motion to Dismiss, filed by the Makah, Quinault, Puyallup, Quileute, Lummi, Suquamish, Upper Skagit, Nisqually and Squaxin Island Tribes, and the Swinomish Indian Tribal Community ("Moving Parties"). Dkt. # 98. The Moving Parties seek reconsideration only of that portion of the Court's Order holding that it does not have jurisdiction to resolve an inter-tribal dispute over the allocation of fisheries resources. The Court deems it unnecessary to direct that a response to the motion be filed and, for the reasons set forth below, shall deny the motion.

ORDER ON MOTION TO DISMISS - 1

DISCUSSION

This matter was initiated as a Cross-Request for Determination filed by the Skokomish Indian Tribe ("Skokomish") in Subproceeding 05-01, asking that the Court "determine and declare an equitable treaty fishing harvest allocation for the available harvest of all species of finfish and shellfish in Hood Canal." Dkt. # 55. This Cross-Request was bifurcated from Subproceeding 05-01 and opened as a separate Subproceeding. The Port Gamble and Jamestown S'Klallam Tribes ("S'Klallam") then moved to dismiss on the basis of lack of subject matter jurisdiction, res judicata and standing. The Court found reason to dismiss on both jurisdictional and res judicata grounds, and did not reach the standing argument.

It is the jurisdictional determination which the Moving Parties now challenge. They assert that the Court's retention of jurisdiction over "[d]isputes concerning the subject matter of this case which the parties have been unable to resolve among themselves" encompasses allocation disputes, and that this Court has specifically so held in the past. The Moving Parties have provided copies of eleven documents, plus citations to specific language in *U.S. v. Washington*, 626 F. Supp. 1405 (W.D.Wash. 1985), in support of their contention. However, when these documents are considered in context and together with other rulings in this case, they provide no basis for reconsideration.

As noted in the previous Order, the Court retained jurisdiction in this matter for certain specified purposes, set forth in Paragraph 25 of the Permanent Injunction. *U.S. v. Washington*, 384 F. Supp. 312, 419 (W.D.Wash. 1974), as amended by Court Order dated August 23, 1993. The relevant section of Paragraph 25 states,

> (a) The parties or any of them may invoke the continuing jurisdiction of this court in order to determine:
> . . . .
> (4) Disputes concerning the subject matter of this case which the parties have been unable to resolve among themselves[.]

C70-9213, Dkt. # 13599.

In moving to dismiss, the S'Klallam asserted that section (4) of Paragraph 25 is inapplicable to confer jurisdiction because the parties have settled their dispute, with finality, through the Hood Canal

ORDER ON MOTION TO DISMISS - 2

Agreement. In considering this argument, the Court exercised its inherent power to determine subject matter jurisdiction, and found that it did not have jurisdiction to consider the inter-tribal allocation dispute presented here, because such dispute did not concern the subject matter of this case. That subject matter, as stated clearly in the original decision in this case, is treaty-secured fishing rights:

> This case is limited to the claimed treaty-secured off-reservation fishing rights of the Plaintiff tribes as they apply to areas of the Western District of Washington within the watershed of Puget Sound and the Olympic Peninsula north of Grays Harbor, and in the adjacent offshore waters which are within the jurisdiction of the State of Washington. The subject matter of this case is limited to the application of those rights to the anadromous fish which are in the waters described, including such fish as are native to other areas.

*U.S. v. Washington*, 384 F. Supp. 312, 400 (W.D.Wash. 1974). While the pool of species covered by this case has been expanded to include non-anadromous fish and shellfish, the subject matter remains limited to the application of treaty rights to the fish. Thus, one statement to which the Moving Parties point, that "this Court has jurisdiction over the subject matter of the dispute, the fish", does not correctly state the subject matter of the case. Subject matter was defined in the first part of the same sentence: "This case is about enforcement of each of the tribes' treaty fishing rights adjudicated in this case. . ." *U.S. v. Washington*, 626 F. Supp. at 1470. While those treaty rights secured to the tribes the right to fish at their usual and accustomed places, they did not create the equitable right of any one tribe to harvest a certain portion of the treaty share.

Thus, a dispute over the exercise of a tribe's primary right, or concerning its usual and accustomed fishing area, would fall under the Court's jurisdiction, because it arises from a treaty right. But nowhere have the Moving Parties pointed to treaty language which confers upon any tribe, vis-a-vis another tribe, the right to an allocation of a portion of the treaty share of fish.

The Moving Parties contend that in its prior rulings in this case, "the Court has expressly held that it has subject matter jurisdiction over inter-tribal allocation disputes, and it has repeatedly exercised jurisdiction over such disputes." Motion for Reconsideration, p. 2-3. In reviewing the cited Orders, the Court finds that they do not support the Moving Parties' assertion with respect to jurisdiction over allocation disputes.

In 1983, in a subproceeding addressing the ocean troll fishery, the Court found that it had

ORDER ON MOTION TO DISMISS - 3

jurisdiction to determine whether one tribe's actions infringed the adjudicated treaty rights of other tribes, *U.S. v. Washington*, 626 F. Supp. At 1470-71. The Court noted that a prior ruling that "the question of intertribal allocation is a matter for the tribes rather than the state to resolve" did not limit the Court's jurisdiction over matters affecting treaty fishing. *Id.* The Court did not specifically rule that it could adjudicate an allocation dispute, apart from matters related to treaty rights. Nor did the Court in any way allocate the fishering among the tribes. Instead, the Court directed the disputing tribes to "confer and negotiate their differences with respect to sharing of treaty runs." *Id.* at 1471.

      The Moving Parties have also cited to Subproceeding 86-5. There, the tribes designated as South Puget Sound tribes alleged that salmon originating in their streams were being intercepted upon return by tribes fishing further north, so that there were few or no salmon left to reach South Sound waters and streams. The tribes had previously negotiated among themselves an allocation of the migrating salmon, as exemplified by the 1980 South Puget Sound Region of Origin Treaty Salmon Allocation Agreement. Subproceeding 86-5, Dkt. # 173. Then, in 1986, the South Puget Sound tribes requested an injunction to protect South-Sound coho salmon stocks from interception. Dkt. # 98 , Exhibit 1. Although the Orders provided by the Moving Parties do not specifically address subject matter jurisdiction, the Court notes that jurisdiction over this issue would be appropriate because it directly concerned treaty rights of the South Puget Sound tribes, rather than an allocation as such. That is, the South Sound tribes sought to enforce their right to take salmon at their usual and accustomed fishing places, as provided in the relevant treaties. If the entire tribal share of salmon were intercepted by tribes fishing farther north, the treaty rights of the South Sound tribes to take fish in their usual and accustomed areas would be infringed. Jurisdiction was therefore appropriate to protect treaty fishing rights. Further, it appears from the various Orders filed that the interested tribes all consented to have the Court resolve the matter.

      Consent to adjudication of the matter was also a factor in subproceeding 91-1, which has also been cited by the Moving Parties. In the 2001 Order Establishing Interim Halibut Fishery Management Plan", the Court stated,

> The court has retained jurisdiction to consider tribal treaty fishing issues in proceedings ancilliary [sic] to Judge Boldt's landmark decision in *United States v. Washington*, C70-9213, and the instant parties have consented to the authority of this court to enter

ORDER ON MOTION TO DISMISS - 4

an order adopting an FMP for the 2001 halibut fishery. Subproceeding 91-1, Dkt. # 75, p. 5. This was another case in which treaty-based fishing rights were at issue: the moving tribes alleged that unrestricted halibut fishing in the ocean by certain tribes would quickly exhaust the entire tribal quota, leaving few or no halibut for the other tribes. *See*, Report and Recommendation on Halibut Allocation, Subproceeding 91-1, Dkt. # 2240, p. 2. Again, jurisdiction was proper in order to protect certain tribes' treaty rights to fish for halibut.

Finally, the Moving Parties point to subproceeding 96-1, regarding the black cod fishery. In that subproceeding, three petitioning tribes alleged that fishing by the Quileute tribe with pot gear would completely preempt their longline fishery, or force them to use pot gear themselves. In granting a motion for a preliminary injunction, the Court specifically noted that the Quileute Tribe had agreed with the petitioning tribes' request for an equitable allocation. Subproceeding 96-1, Dkt. # 47, p. 3. It was this consent that provided a basis for the Court's jurisdiction to determine an allocation.

Pursuant to Paragraph 25 of the permanent injunction in this case, jurisdiction has been retained for certain limited purposes, as set forth in that paragraph. The parties to this case, whether tribal, state, or federal, have waived sovereign immunity for those purposes only. In consideration of the importance of sovereign immunity, such purposes may not be broadened without the parties' consent.

In 1993, in objecting to a proposed "Sunset Order" which would close this case, the tribes invoked sovereign immunity as a basis for asking that the Court keep this case open until "all the disputes between these parties regarding treaty fishing rights have been resolved." Dkt. # 98, Exhibit 9, p. 7. While the tribes speculated that such adjudicable disputes could include resolution of intertribal allocation issues, there was no such specific finding by the Court. *Id.* It is this Court's view that equitable allocation is a management issue, and does not arise from the tribes' treaty rights. The tribes in their objection to the Sunset Order, including every tribe now before the Court as a Moving Party, assured the Court that concern over Court involvement in fisheries regulation was without basis, because "most of the underlying disputes are not with management per se but with essential legal issues which need determination by a court of law." *Id.*, p. 5.

A simple request for equitable allocation, in the absence of factors by which one or more tribes

ORDER ON MOTION TO DISMISS - 5

may completely preempt another tribe's right to fish, does not present a legal issue for determination by this Court. The Court thus declines to reconsider its ruling that it does not have jurisdiction under Paragraph 25 to consider such request, in the absence of consent by all parties. The motion for reconsideration is accordingly DENIED.

Dated this 17th day of January, 2007.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS - 6